OPINION
{¶ 1} This is an appeal from a judgment of the Geauga County Court of Common Pleas in which the court found appellants/cross-appellees, Frank and Donatella Riback (the Ribacks) in breach of contract, and awarded damages in the amount of $12,097.60, plus interest, to appellees/cross-appellants, William and Barbara *Page 2 
Windsor (the Windsors). For the reasons that follow, we modify the judgment of the lower court, and affirm as modified.
 {¶ 2} On September 20, 2003, the Ribacks executed a standard form purchase agreement with an addendum attached, wherein they agreed to purchase real property, located at 17401 Hawksview Lane in Bainbridge Township, Ohio, from the Windsors for $410,000. The purchase agreement provided for a $20,000 earnest deposit, with $15,000 due four days after the acceptance of the contract, and the remaining $5,000 balance due on November 1, 2003. Per the terms of the purchase agreement, the Ribacks were to take possession of the property on October 1, 2003, and the closing on the property was to take place on January 31, 2005. The Windsors signed the purchase contract and the addendum thereto, on September 29, 2003.
 {¶ 3} The addendum provided as follows:
 {¶ 4} "Seller agrees to rent the property to the Buyer from 10/1/03 to 1/31/05 for $2,500 [per] month with $500 of the monthly rent going towards downpayment on the property. Buyer agrees to secure renter's insurance for the property for the duration of the rental period. Buyer is responsible for all utility payments, maintenance, repair, yard maintenance and snow removal for the property. Seller is responsible for mortgage and property tax payments. Seller is also responsible for homeowner's insurance.
 {¶ 5} "The $20,000 earnest money goes directly to the Seller and is non-refundable to the Buyer if the Buyer fails to perform their obligations per the purchase agreement by 1/31/05."
 {¶ 6} On September 29, 2003, the parties also entered into a Rental Agreement, in which the Ribacks agreed to rent the property from the Windsors for a period of 15 months, beginning on October 1, 2003, and ending on January 31, 2005, *Page 3 
the closing date for the sale, as provided in the purchase agreement. This agreement provided for the Ribacks to pay a security deposit of $2,500, rent in the sum of $37,500, due in monthly installments of $2,500. The first rental payment was to be made on or before October 1, 2003, with subsequent payments due and payable on the first day of each subsequent calendar month.
 {¶ 7} The rental agreement further provided, in relevant part, as follows:
 {¶ 8} "Any monthly payment not made by Tenant when due, or within five (5) days thereafter, shall result in additional rent of $10.00 per day for each day that payment remains outstanding.
 {¶ 9} * * * Upon timely payment thereof, the amount of $500.00 shall be credited from each of the fifteen monthly payments toward the purchase price of the subject premises, pursuant to a Real Estate Purchase agreement by and between Landlord and Tenant, dated September 20, 2003, September 25, 2003, September 29, 2003, and otherwise."
 {¶ 10} "Tenant shall pay, in addition to rents specified herein, for utilities serving the premises, including, but not limited to, electricity, telephone, cable television, satellite television, gas, oil, water and sewer. Electricity, telephone, cable television, gas, oil, water and sewer shall be payable through accounts established in the name of Tenant and paid directly by Tenant to Landlord by the service providers. Any utility accounts serving the premises but billed to landlord by the service providers shall be billed by landlord to Tenant. Tenant shall remit such charges to Landlord monthly, said amounts being considered for the purpose of this agreement as additional rent. Landlord shall bear responsibility for payment of mortgage and property tax obligations during the term hereof. *Page 4 
 {¶ 11} "* * *
 {¶ 12} "Should Tenant default in payment of rent specified herein, any part thereof, or in fulfillment of the covenants or agreements specified herein to be fulfilled by Tenant, should any waste be committed upon or damage be done to subject premises, Landlord may, at Landlord's selection, at any time as such default occurs or continues or before the replacement of such waste or damage, without notice, declare the rental term ended and enter in possession of the subject premises, sue for and recover all rents and compensation for any violations hereunder."
 {¶ 13} On October 1, 2003, the Ribacks moved into the property. Prior to taking possession, they made an earnest money payment of $15,000, pursuant to the purchase agreement and a payment of $2,500 for the first month's rent.
 {¶ 14} Almost immediately after taking possession of the property, the Ribacks began experiencing financial difficulties. Mr. Riback called Mr. Windsor to inform him that he was going to have difficulty meeting the November rent payment in a timely fashion. In a letter memorializing the conversation sent to Mr. Windsor on November 3, 2003, Mr. Riback explained that he had written two checks for November's rent, because he was "still digesting moving costs and other payments made this past month." In the letter, Mr. Riback requested that Mr. Windsor delay depositing the second of the checks until November 14, 2003.
 {¶ 15} Mr. Windsor replied to Mr. Riback in a letter dated November 10, 2003. In the letter, Mr. Windsor acknowledged his agreement with Mr. Riback, per their phone conversation, that he would give Mr. Riback an additional month to "delay payment of the $5,000 non-refundable payment due on November 1," and "would consider whether a further delay could be given." However, the letter went on to state that Mr. Windsor *Page 5 
was "then shocked to receive the November rental payment late on November 5 * * * and when the payment arrived, half of the rent was on a post-dated check." As a result of the aforementioned acts, Mr. Windsor informed Mr. Riback that, pursuant to the purchase agreement, the "late payment means that $500 of the payment will not be applied to the purchase price," and "the lease is in default."
 {¶ 16} In December 2003, the Ribacks made a timely lease payment. However, in subsequent months, they again had difficulty making them. On January 7, 2004, the Windsors received notice that a check for January rent from the Ribacks, deposited into their account on January 5, 2004, was returned for non-sufficient funds. In February 2004, the Ribacks again wrote two separate checks for rent, one for $1,500 dated February 4, 2004, and the second one, for $1,000 dated February 13, 2004. In March 2004, the Ribacks remitted their rent check to the Windsors on March 5, 2004, but requested that Mr. Windsor refrain from depositing the check into his account until March 12, 2004. In April 2004, the check for the rent was remitted on time, but the check was returned with a stop payment order.
 {¶ 17} On April 20, 2004, Mr. Windsor sent Mr. Riback an e-mail informing him that his rent check for April 2004 had twice been returned to the bank marked "payment stopped." Mr. Windsor demanded that $7,500, representing the unpaid balance of the earnest money payment, and the $2,500 owed for April 2004, be remitted by 3:00 p.m. or he "will be taking the actions provided under the [d]efault terms of our agreement." Mr. Riback did not respond to this e-mail until April 23, 2004, at which time he asked Mr. Windsor to "wait 5-10 more days for [him] to get current," promising that the matter would be "resolved in the first week of May." Mr. Windsor replied back the same day, informing Mr. Riback that he had referred the matter to his attorney. *Page 6 
 {¶ 18} The Windsors filed a action in Forcible Entry and Detainer in Chardon Municipal Court. On May 12, 2004, that court granted a writ of restitution, ordering the Ribacks to vacate the property by May 22, 2004. After the Ribacks vacated the premises, the Windsors sold the property to the Gabriels for $425,000.[1]
 {¶ 19} On May 19, 2004, the Windsors filed the instant action for money damages. On November 10, 2004, after receiving leave to plead, the Ribacks filed their answer pro se. On October 31, 2005, the Ribacks, after hiring an attorney and responding to various motions, requested leave to amend their answer, which was granted by the trial court. On December 12, 2005, the Ribacks filed an amended answer and counterclaim, in which the Ribacks sought recovery of the $15,000 earnest money deposit. The Windsors responded to the Ribacks counterclaim on December 16, 2005.
 {¶ 20} The matter proceeded to bench trial on March 1, 2006. On March 21, 2006, the trial court issued its decision, including findings of fact and conclusions of law, and issued its judgment granting damages for breach of the lease agreement and purchase agreement in the total amount of $12,097.60. It is from this judgment that the Ribacks timely appealed. The Windsors filed a cross-appeal which this court consolidated with the Ribacks' appeal, sua sponte, for the purposes of our review.
 {¶ 21} On appeal, the Ribacks assign the following as error:
 {¶ 22} "[1.] The trial court's determination that this real estate deal was not a single transaction was contrary to the evidence. *Page 7 
 {¶ 23} "[2.] The trial court erred, as a matter of law, in its determination of the Windsors' damages incurred after the Ribacks' alleged breach of the real estate contract/lease, when the trial court failed to consider the mitigation that resulted following the Windsors' sale of the subject property to a third party.
 {¶ 24} "[3.] The trial court erred, as a matter of law, in permitting the Windsors to obtain a windfall or `betterment' by awarding them damages which operated to place the Windsors in a better position than had the contract been performed by the Ribacks."
 {¶ 25} The Windsors raise the following cross-assignment of error:
 {¶ 26} "The trial court's calculation of the plaintiff's damages resulted in the award of a dollar amount substantially less than, and contrary to, the largely uncontroverted evidence presented at trial, and so the award should be for a greater amount in accord with the proof presented."
 {¶ 27} In their first assignment of error, the Ribacks allege that the trial court's determination that the aforementioned real estate deal was not a single transaction was contrary to the evidence, thus allowing the court to improperly "sidestep" the issue of whether the Windsors attempted to mitigate their damages.
 {¶ 28} Our review of the trial court's judgment entry reveals that it made no specific finding as to whether the lease/purchase agreement was a single transaction or separate transactions. The Ribacks acknowledge this fact. In addition, the Ribacks fail to cite to any case law in support of this assignment of error. "App.R. 12 directs this court to determine the outcome of the merits on the assignments of error set forth in the briefs required by App.R. 16. The latter rule mandates that a valid argument shall contain the contentions of appellants `with citations to the authorities, statutes and parts of the record relied on.'" Roosa v. Stokes (July 28, 1989), 11th Dist. No. 1976, 1989 *Page 8 
Ohio App. LEXIS 2975, at *4-*5. "This court is not required to pass upon arguments of law not specifically addressed." Id. at *5.
 {¶ 29} The Ribacks' first assignment of error is without merit.
 {¶ 30} Since the Ribacks' second and third assignments of error essentially allege the same error, in that they challenge the amount of damages awarded by the trial court, they will be addressed together.
 {¶ 31} In their second assignment of error, the Ribacks again allege that the trial court erred by "failing to consider the mitigation that resulted from the Windsors' sale of the subject property to a third party." In their third assignment of error, the Ribacks contend that, despite their breach, the Windsors' subsequent sale of the property resulted in a profit which must be offset against any damages they may claim against the Ribacks, otherwise they would reap a "financial windfall" or "betterment."
 {¶ 32} As the Ribacks correctly note, in order for plaintiffs to successfully prosecute a breach of contract claim, they must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) a breach by the defendant, and (4) damage or loss to the plaintiff.Doner v. Snapp (1994), 98 Ohio App.3d 597, 600 (citation omitted).
 {¶ 33} In the instant matter, the Ribacks do not dispute the existence of the first three elements. However, they argue that, had the trial court properly viewed the purchase/lease agreement as a single agreement, the Windsors would only be entitled to compensatory damages as follows:
 {¶ 34} Purchase Price (Including unpaid earnest money) $410,000.00
 {¶ 35} Unpaid Rent

 {¶ 36} April, 2004 $2,500.00
 *Page 9 
 {¶ 37} May, 2004 $2,500.00
 {¶ 38} June, 2004 $2,500.00
 {¶ 39} Late Rent Penalties $ 910.00
 {¶ 40} Unpaid Water/Sewer Bills $ 687.00
 {¶ 41} Total: $419.097.00

 {¶ 42} Based upon the subsequent sale of the property to the Gabriels for $425,000, the Ribacks argue that they are entitled to, at a minimum, a "negation" of the damages or an "offset" in the amount of $5,903, representing the Windsors' "profit" from the sale.
 {¶ 43} "As a foundational matter, a reviewing court will not disturb a trial court's decision regarding its determination of damages absent an abuse of discretion." Williams v. Kondziela, 11th Dist. No. 2002-L-190, 2004-Ohio-2077, at ¶ 19, citing Roberts v. United States Fid. Guar.Co., 74 Ohio St.3d 630, 634, 1996-Ohio-101; Bradford v. B P WreckingCo., Inc., 171 Ohio App.3d 616, 2007-Ohio-1732, at ¶ 44 (citations omitted). "The term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations." Williams, 2004-Ohio-2077, at ¶ 19 (citation omitted). Thus, an abuse of discretion will be found only in circumstances where the trial court's attitude in rendering its judgment is "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 44} The Ribacks correctly note that "the injured party to a written contract is entitled to recover what he has lost by act of the other party" [and] "should have such a sum of money as will put him in the same position as if the contract had been fully performed." Schwartz v.Baker (1950), 99 N.E.2d 498, 1950 Ohio App. LEXIS 849, at *8-*9. In other words, "[t]he plaintiff's right is to recover such damages as the *Page 10 
defendant's wrong necessarily caused him." Chandler v. Gen. MotorsAcceptance Corp. (1980), 68 Ohio App.2d 30, 32 (citation omitted). In an action for breach of a real estate sales contract, the proper measure of damages is "the difference between the original contract price and the fair market value of the property at the time of the breach."Williams, 2004-Ohio-2077, at ¶ 20 (citation omitted); Snyder v.Morgan, 11th Dist. No. 2006-P-0065, 2007-Ohio-4630, at ¶ 23 (citation omitted).
 {¶ 45} The Ribacks do not dispute that, under ordinary circumstances, the Windsors would have been entitled to damages for unpaid rent in the amount of $7,500, late rent penalties in the amount of $910 for April, May, and June of 2007, and damages for unpaid utilities in the amount of $697 for their breach of the rental contract. However, they maintain that the provision in the purchase contract requiring the $20,000 earnest money deposit prevents the Windsors from recovering damages in excess of the contract price of $410,000, absent some showing that they made an attempt to mitigate their damages. We disagree.
 {¶ 46} The Ribacks' argument is based upon two faulty presumptions. First, that the trial court made a finding that the Windsors breached the purchase agreement, and second, that the provision in the purchase contract providing for the non-refundable earnest money deposit was a liquidated damages provision.
 {¶ 47} With regard to the Ribacks' first presumption, it is a well-settled principle of law, that "[i]f there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Fickes v. Kirk, 11th Dist. No. 2006-T-0094,2007-Ohio-6011, at ¶ 16, citing Middendorf v. Middendorf,82 Ohio St.3d 397, 401, 1998-Ohio-403. *Page 11 
 {¶ 48} The trial court found that "[defendants Frank and Donatella Riback breached the real estate Purchase Agreement and the Rental Agreement." However, the trial court made no such finding that the Windsors' breached the Purchase Agreement and/or the Rental Agreement. Even if we were to accept, for the sake of argument, that the Ribacks were correct in concluding that the Purchase and Rental agreements should be treated as one, the Ribacks' undisputed failure to make the $5,000 earnest money deposit on November 1, 2003, as required, was enough to violate the purchase "portion" of the agreement, even in the absence of their later undisputed failure to pay rent and utilities.
 {¶ 49} Next, in determining whether or not the earnest money provision constituted a liquidated damages provision, we must, as with all contracts, examine the parties intent based upon the language of the document. See J.B.H. Properties, Inc. v. N.E.S. Corp., 11th Dist. No. 2007-L-024, 2007-Ohio-7116, at ¶ 10 ("Absent ambiguity in the language of the contract, the parties' intent must be determined from the plain language of the document.") (citation omitted).
 {¶ 50} With regard to the earnest money provision, the form purchase agreement provided for a purchase price of $410,000 for the property, with the earnest money deposit of $20,000 to be "credited against the purchase price." The agreement additionally contained a handwritten notation with regard to the earnest money deposit, which stated "$15,000 is due four (4) day[s] after acceptance. $5,000 is due on 11/1/03 — See Addendum I."
 {¶ 51} The addendum to the purchase agreement provided "[t]he $20,000 earnest money goes directly to the Seller and is non-refundable to the Buyer if the Buyer fails to perform their obligations per the purchase agreement * * *." *Page 12 
 {¶ 52} "If the contract's terms are unambiguious, a court may not interpret the contract in a manner inconsistent with those terms."In re Murray, 11th Dist. No. 2000-T-0152, 2002-Ohio-1686, 2002 Ohio App. LEXIS 1662, at *9 (citation omitted). Contrary to the Ribacks' assertions, our review of the plain language of the contract and the associated addendum give no indication that these clauses were intended to operate as a liquidated damages provision.
 {¶ 53} It is beyond dispute that "[liquidated damages are an agreed upon amount of money to be paid in lieu of actual damages in the event of a breach of contract." Connour v. Steel, 2nd Dist. No. 19632,2004-Ohio-1162, at ¶ 26 (citation omitted) (emphasis sic). By contrast, an earnest money provision in a real estate purchase agreement is commonly viewed in terms of an option contract, in which the "fee is forfeited if the offeree does not exercise the option, as its very purpose is consideration for the privilege of keeping the offer open for a certain stated period of time." Reedy v. Cincinnati Bengals, Inc.
(2001), 143 Ohio App.3d 516, 528 (Gorman, P.J. dissenting).[2]
 {¶ 54} "[A] provision in a contract for the sale of real estate allowing the vendor to keep the earnest money paid in the event of a default by the vendee is a valid, enforceable provision." Cochran v.Schwartz (1997), 120 Ohio App.3d 59, 61 (citation omitted). "Earnest money * * * is generally subject to forfeit where it is a comparatively small advance payment." Ottenstein v. Western Reserve Academy (1977),54 Ohio App.2d 1, 3 (citation omitted). *Page 13 
 {¶ 55} In the instant case, although the $20,000 earnest money payment may, on the surface, appear to be a significant amount, it represents less than 5% of the total purchase price of $410,000. The fact that only $15,000 of this amount was received as an advance payment, which represents a little over 3½% of the purchase price, makes the forfeiture of this amount even less onerous to the Ribacks.
 {¶ 56} Moreover, this court has held that "an earnest money provision that fail[s] to specify a fixed amount of money to be paid 'in lieu ofactual damages in the event of a breach of contract' do[es] not constitute a liquidated damages provision." Reitz v. Giltz Assoc.Inc., 11th Dist. No. 2005-T-0126, 2006-Ohio-4175, at ¶ 26 (citation omitted) (emphasis sic). The provision in the lease portion of the agreement allowing the Windsors to "sue for and recover all rents and compensation for any violations," in the event of default, makes plain that the earnest money provision was not meant to be a liquidated damages provision.
 {¶ 57} There is yet another reason to reject the Ribacks' argument. "[F]ailure to mitigate damages is an affirmative defense," which is "waived if not raised in a pleading." Telmark, Inc. v. Liff (Sept. 21, 1998), 12th Dist. No. CA98-01-004, 1998 Ohio App. LEXIS 4383, at *7 (citations omitted). In the instant case, the Ribacks failed to raise this issue in their pleadings. Accordingly, it was waived, and the trial court did not err by not addressing this issue.
 {¶ 58} Appellants' second and third assignments of error are without merit.
 {¶ 59} In their cross-assignment of error, the Windsors assert that the trial court erred in awarding damages. First, they argue that the trial court ignored the uncontroverted evidence that the Ribacks failed to pay the remaining $5,000 of the earnest money deposit, and erred in awarding them only $3,000 for the balance of the *Page 14 
earnest money due. While we agree that the trial court erred in awarding the Windsor's only $3,000 for the balance of the earnest money due, the evidence demonstrates that the trial court considered the evidence of the Riback's failure to pay the remaining $5,000 balance when rendering its decision.
 {¶ 60} "[W]hen reviewing evidence presented at trial, `an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence.'" Welty v. Welty, 11th Dist. Nos. 2007-A-0013 and 2007-A-0015, 2007-Ohio-5217, at ¶ 26
(citation omitted). "[I]f the judgment of the trier of fact is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (citations omitted). However, "[a] reviewing court may reverse a damage award if it is manifestly against the weight of the evidence."Eleven Ten Parkway Co. v. K. Amalia Ents., Inc. (Dec. 23, 1997), 10th Dist. No. 97APE03-419, 1997 Ohio App. LEXIS 6005, at *5, citingSchendel v. Bradford (1922), 106 Ohio St. 387, 394 (emphasis added). "In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the [finder of fact] to include all the items of damage making up the plaintiff's claim." Sharp v. Clark (May 20, 1992), 2nd Dist. No. 1285, 1992 Ohio App. LEXIS 2624, at *4-*5 (citation omitted).
 {¶ 61} Here, the trial court found that "[t]he Windsors received payments of $15,000 and $1,000 towards the earnest money deposit. The Ribacks are indebted to the Windsors for $3,000 of the earnest money deposit." *Page 15 
 {¶ 62} Our review of the record reveals the court's finding that the Ribacks' indebtedness to the Windsors' was $3,000 is not supported by the evidence. The undisputed testimony reveals that the Ribacks never paid the $5,000 outstanding balance of the earnest money payment. However, the trial court took into account the $500 monthly credit due pursuant to the rental agreement for the Ribacks' timely payments in October and December of 2003. Since the rental agreement clearly stated that such credits were to be applied "upon timely payment" of the monthly rent, the court's application of this credit is supported by competent, credible, evidence.
 {¶ 63} As a result, the Windsors are entitled to a payment of $4,000 on the unpaid portion of the earnest money deposit, as opposed to the court's finding of $3,000, since $4,000 is the difference between the $1,000 credit as applied by the trial court and the remaining $5,000 earnest money due. Because the court's award of $3,000 cannot be "reconciled with the undisputed evidence in the case", the Windsors' first argument on cross-appeal has merit.
 {¶ 64} The Windsors next argue that the trial court erred in awarding delinquent rent in the amount of $7,500 for the months of April, May, and June 2004. The Windsors argue that the language of the contract entitles them to an additional amount of $2,500 in rent for the month of July 2004, or, in the alternative, a pro-rated share of the rent for that month. We disagree.
 {¶ 65} Turning to the clause of the rental agreement in question, it states that "[t]enants shall pay to landlord as rent the sum of $37,500, in monthly installments of $2,500 each month. The first such rental payment shall be due and paid by the first day of each calendar month during the term hereof." *Page 16 
 {¶ 66} The Windsors acknowledge that the rental agreement "contains no provision for prorated rent." In the absence of such a provision, the Windsors are not entitled to a pro rata share. Furthermore, it is undisputed that the Ribacks were no longer occupying the premises in July of 2004, and, that at some point during the month of July 2004, the Windsors ceased to be the "landlord" as contemplated by the agreement. Based upon the foregoing, we cannot conclude that the trial court abused its discretion by limiting the award of delinquent rent under the lease agreement to the months of April through June of 2004.
 {¶ 67} The Windsors' second argument on cross-appeal lacks merit.
 {¶ 68} Finally, the Windsors argue that the trial court erred by failing to award them an amount of "at least $7,500.00 * * * to reimburse [them] for other costs incurred to remedy the Appellants' defaults of the subject Rental Agreement."
 {¶ 69} In support of their argument, the Windsors rely on the clause of the Rental Agreement which states: "Any amounts paid by landlord to keep their premises in a clean, safe and healthy condition * * * or to remedy any default by the tenant, are heareby agreed and declared to be so much additional rent and said sum shall be due and payable with the next installment of rent hereunder."
 {¶ 70} The Windsors cite to myriad alleged expenditures, including "substantial additional charges to repair the premises," the payment of a $2,500 real estate commission, and "utility, landscape, and other fees and costs."
 {¶ 71} The trial court, in reviewing the evidence, concluded that "except for the unpaid balance of the earnest money, the unpaid rent, and the unpaid utility bills, Plaintiffs have not produced probative evidence of any other damages." Our review of the record reveals that the Windsors' alleged proof of damages was solely based upon *Page 17 
Mr. Windsor's testimony, without the benefit of corroborating testimony or receipts to substantiate these alleged expenses.
 {¶ 72} "As a general rule, evidence of damages is part of the plaintiffs case, and he must prove damages in order to recover them." Id. at *9 (citation omitted). "[I]n cases involving a breach of contract claim, the plaintiff cannot recover damages beyond the amount that is established with reasonable certainty." Id. (citation omitted), (emphasis added).
 {¶ 73} As is apparent from the judgment of the court, it determined, based upon the evidence adduced, that the Windsors failed to prove these damages with reasonable certainty. Accordingly, we cannot conclude the trial court's finding was against the manifest weight of the evidence.
 {¶ 74} In addition to the aforementioned expenses, the record reveals that the $7,500 the Windsors seek to recover is for attorney fees expended to enforce the contract and to evict the Ribacks from the premises.
 {¶ 75} "[I]n Ohio, attorney fees generally are not recoverable as costs in a contract action." First Bank of Marietta v. L.C. Ltd. (Dec. 28, 1999), 10th Dist. No. 99AP-304, 1999 Ohio App. LEXIS 6504, at *21 (citation omitted). It is well-settled that "[w]hen an award of attorney fees is not authorized by * * * contract, the award is a matter of the trial court's sound discretion." J.B.H. Properties, 2007-Ohio-7116, at ¶ 10 (citation omitted).
 {¶ 76} As is clear from the foregoing contract language, the contract does not explicitly provide for the award of attorney fees, but rather provides for "amounts paid * * * to remedy any default." In the absence of express language authorizing attorney fees, we cannot conclude that the trial court abused its discretion by failing to award *Page 18 
them. Cf. First Bank, 1999 Ohio App. LEXIS 6504, at *21 (the trial court did not abuse its discretion by not awarding attorney fees where the contract clause in question allowed for the recovery of "costs of suit" without expressly mentioning attorney fees).
 {¶ 77} The Windsors' third argument in their cross-assignment of error is without merit.
 {¶ 78} Pursuant to App.R. 12, we modify the damage award to the Windsors from $12,097.60 to $13,097.60, to correctly reflect the unpaid earnest money balance of $5,000, less the $1,000 credit for the Ribacks' timely payment of rent in October and December of 2003. As thus modified, the judgment of the Geauga County Court of Common Pleas, is affirmed. Costs to be taxed against appellants/cross-appellees.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur.
[1] Although the Ribacks refer to the subsequent purchasers of 17401 Hawksview as the Gabrielsons, the deed memorializing the sale, which is part of the record, refers to them as the Gabriels, and we shall refer to them accordingly.
[2] Such a finding is particularly appropriate where, as here, the undisputed evidence revealed the contract price of $410,000 was $18,000 less than the sale price of the home when purchased by the sellers. *Page 1